TYBBR, J.
This suit has been instituted by a ward against the representative and sureties of his guardian, for the purpose of disaffirming a contract entered into with his guardian when he was only eighteen years old, and for a settlement of the guardianship account. The suit is instituted more than ten years after the ward arrived at age, and the statute of limitations is relied on in the answers of the defendants. It is insisted, however, by the plaintiffs, first, that the cause of action on a guardian’s bond does not accrue on the ward’s arriving at age, and, secondly, that a fraud was perpetrated on the ward by the guardian and two of his sureties, A. T. and Peterson Goodwyn; that the ward instituted this suit as soon as the fraud was discovered, and therefore the statute of limitations ought not to begin to run until the discovery of the fraud.
As to the first point, there is no room for controversy. *That the cause of action on the bond of a guardian accrues on the ward’s arriving at age, is settled by judicial decision in this State, is sanctioned now by legislative enactment, and is consonant with reason and justice. Whenever the relation of guardian and ward terminates, it is right that the ward should not only have the power to call his guardian to account in a court of equity, but, in order to avoid multiplicity of suits, he should have the right to join his sureties, who are responsible in the action, in case of the guardian’s inability to satisfy the decree that may be rendered in the cause. See Call v. Ruffin, 1 Call, 333, and Code, p. 591, § 6.
As to the second point, the fraud complained of and which it is urged should prevent the statute of limitations from running until its discovery, consists in the fact of the guardian entering into a contract with his ward when he was a minor, by which, among other things, he was to surrender the ward’s slaves and pay him the sum of $2,500 on his arriving at age, which sum was not more than a third or fourth of the amount in which the guardian was actually indebted to him, and on the payment being made, it was to be in full of all *848 demands. It is also charged that A. T. Goodwyn and Peterson Goodwyn, two of the securities in the guardian’s bond, were privy to the contract and equally culpable with the guardian in the perpetration of the fraud.
Admitting the allegations in the bill in reference to the execution of this contract to be true, the question is, whether such a transaction will bring this case within any of the exceptions enumerated in the statute of limitations, or whether there is anything growing out of this agreement, and the facts attendant on its execution, which operates to prevent or obstruct the ward in the prosecution of his remedy against the guardian. This contract, being made with an infant, imposed no obligation on him. He could avoid it when he arrived at age. Whether it was fair or fraudulent was, as to his remedy, wholly immaterial. It was his right, no matter *what the
character of the contract was, to dis-affirm and annul it. No necessity was imposed on him to hunt up evidence or seek information with a view to a discovery of fraud in the contract; and there was no reason, therefore, why the guardian should conceal the fraud, if any existed; for, as the contract interposed no obstacle to the ward’s suit against the guardian, it could furnish no shield to the guardian against the suit; and, moreover, if this alleged fraud could, eleven years after the ward arrived at age and fourteen years after the transaction, be discovered by ordinary diligence, it is equally clear, that, with the same diligence, it might have been discovered within one year after the ward arrived at age; for it required very little diligence to discover that the ward had been overreached in the contract, and the sources whence this information was derived, were as accessible to the ward when he arrived at age, as they were when he instituted this suit. He is, therefore, to attribute his loss to his own indolence and laches. If, however, there is any doubt as to the law, it is manifest the complainant in the court below has failed to establish, by proof, the complicity of the sureties in this transaction between the guardian and ward. A. T. Goodwyn, the survivor of the guardian and his co-surety Peterson Goodwyn, flatly denies in his answer all knowledge of this contract until the institution of this suit; and Allen, who is the only witness who speaks to this point, although, in his deposition, taken in March, 1847, he says that A. T. Goodwyn and Peterson Goodwyn were present at the execution of the contract, yet, in August, 1847, when re-examined as to this same matter, say that A. T. Good-wyn was at his house, and he thinks it probable he was present, thus showing an indistinctness of memory not to be relied on. Such evidence, standing alone, will not be permitted to outweigh the answer of A. T. Goodwyn. There is, therefore, nothing in the cause to prevent the statute of limitations operating as a bar to the complainant’s demand against the sureties. I was *inclined to treat this suit as a suit in equity founded on the bond, and, if so, it seems to me that the language of the statute would protect the guardian as well as the sureties from the complainant’s demand, although if he had instituted a suit against the guardian alone as a fiduciary, the statute would have furnished him no protection. It happens, however, in this case, that it is a matter of no importance, as the guardian is represented to have died utterly insolvent.
It is the opinion of a majority of the court that the case should have been dismissed as to the sureties only and their representatives, and that the cause ought to have proceeded against the representative of the guardian.